## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02845-RPM-NYW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

SAN MIGUEL POWER ASSOCIATION, INC.

      Defendant.

_____

## SAN MIGUEL POWER ASSOCIATION, INC.'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT

_____

Defendant San Miguel Power Association, Inc., by its undersigned counsel, hereby submits this Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff's claims for trespass and interest and penalties associated with the alleged trespass (Plaintiff's Third, Fourth, and Sixth Claims for Relief).  This Motion is supported by the Declarations of Daniel W. Short, Galen Wright, and Paul H. Enstrom filed herewith.

## INTRODUCTION

This case involves a May 2010 forest fire that burned portions of federal lands in western Colorado. The fire ignited just off Highway 145 in San Miguel County during a windstorm.  The chain of events that led to the fire started when an approximately 80-foot cottonwood tree, whose root ball was decaying below ground, blew over in strong winds. This large cottonwood tree ("Tree 1") fell onto a second, smaller cottonwood tree ("Tree 2"), which was just over 60 feet in height. Tree 2 snapped from the weight of Tree 1, and collapsed onto San Miguel Power Association's

electrical distribution lines. Under the weight of the trees, the power line broke, fell to the ground, and ignited dry grasses.  The fire spread and burned approximately 2,600 acres of land administered by the Bureau of Land Management ("BLM") and the United States Forest Service. The fire came to be known as the Beaver Fire.

After an agency investigation, BLM investigators concluded that San Miguel was at fault for causing the Beaver Fire.  The United States later reasoned that San Miguel failed to maintain the vegetation along its right-of-way. The United States believed that San Miguel should have removed Tree 1, despite Tree 1 being well outside of San Miguel's right-of-way, and despite the fact that Tree 1's root decay could not be seen above ground.

Approximately three years after the Beaver Fire, the United States sent a letter demanding that San Miguel pay for damages to the land and for the cost of suppressing the fire, which totaled approximately $1.8 million.  Approximately six and a half years after the Beaver Fire, and just a few days short of the running of the statute of limitations, the United States sent San Miguel a Notice of Trespass letter, alleging that San Miguel trespassed on federal lands in violation of, inter alia, 43 C.F.R. § 2808.11.  Three days after sending this Notice, the United States filed this action. The United States' Complaint alleges claims of (1) negligence, (2) breach of contract, and (3) trespass in violation of two sets of Department of Interior (DOI) regulations: 43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239.  These regulations broadly define "trespass," and provide for exemplary damages, civil penalties, and other remedies.

The United States' trespass claims premised on DOI regulations should be dismissed. Neither federal statute nor federal common law provides a cause of action permitting the United States to bring a trespass claim against someone who did not intend to enter and injure another's

property.  The United States is limited to alleging claims based on Colorado state law.  Because Colorado does not recognize a claim for "negligent trespass," the United States' claims that San Miguel committed trespass fail as a matter of law.

Moreover, 43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239 do not have the force and effect of law to provide a basis for the United States' trespass claims.  Congress mandated that DOI/BLM manage and use public lands for the benefit of the American people.  43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239 exceed this legislative mandate by expanding the definition of trespass to include (1) any "injury" to the resources on public land, regardless of fault or intent, and (2) non-willful acts or omissions, including a person's "mistake or inadvertence."  These definitions of "trespass" are contrary to common law theories of trespass (requiring an intentional act) and do not carry out any directive of Congress. 43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239 are invalid to the extent they impose trespass liability for non-intentional acts or omissions.

Finally, the United States' trespass claim based on 43 C.F.R. Subpart 2808 fails because the United States did not adhere to its own procedures set forth in the regulation to bring an administrative action for trespass against San Miguel.  Specifically, the United States did not afford San Miguel an opportunity to appeal the United States' trespass determination through the administrative process prior to initiating this action, which denied San Miguel due process.

The material facts are not in dispute and San Miguel is entitled to judgment as a matter of law. San Miguel respectfully requests that the United States' Third Claim for Relief (Trespass—43 C.R.R. 2808.10), Fourth Claim for Relief (Trespass—43 C.F.R. 9230), and Sixth Claim for Relief (Interest and Penalties—43 C.F.R. 2808.11) be dismissed with prejudice.

## STATEMENT OF FACTS

1.      San Miguel Power Association, Inc. is a member-owned, locally-controlled rural electric cooperative with offices in Nucla and Ridgway, Colorado. It was established in 1938 for the purpose of supplying central station power to the rural farms and dwellings in the San Miguel Basin area. Today, San Miguel serves approximately 9,600 members in seven counties in western Colorado. Decl. of P. Enstrom at ¶ 2.

2.      San Miguel owns and operates power lines that pass through federal lands, including lands administered by the Bureau of Land Management ("BLM"). ECF No. 1 (Complaint) at ¶ 6; ECF No. 5 (Answer and Affirmative Defenses) at ¶ 6.

3.      San Miguel carries out its provision of electricity across federal lands pursuant to agreements with federal agencies, including BLM. ECF No. 1 at ¶¶ 6, 30; ECF No. 5 at ¶¶ 6, 30.

4.      As relevant to this case, San Miguel entered into a contract with the United States Department of Interior ("DOI")/BLM which granted a right-of-way to San Miguel on September 6, 1983.[1]  ECF No. 1 at ¶ 6; ECF No. 5 at ¶ 6; Decl. of D. Short at ¶ 2, Ex. A. In the right-of-way grant, San Miguel was authorized to construct, operate, and maintain an overhead power line. Decl. of D. Short at ¶ 2, Ex. A. The authorized width of the right-of-way was 50 feet (allowing for 25 feet on either side of the power line). *Id.* at 1.

---

[1]San Miguel also entered into a Special Use Permit (SUP) with the United States Forest Service to operate San Miguel's power lines over Forest Service land, which land was damaged in the Beaver Fire. ECF No. 1 at ¶¶ 30-32.  The SUP contains a provision imposing strict liability on San Miguel. *Id.* at ¶ 32. The SUP is not relevant to this case. There is no evidence that the Beaver Fire, or any acts contributing to the Beaver Fire, occurred on land subject to the SUP. Further, the United States has abandoned its strict liability theory, ECF No. 13 at 7, and does not allege that San Miguel breached the SUP, *see* ECF No. 1 at ¶¶ 42-46 (alleging breach of contract regarding BLM right-of-way agreement).

5.      The Terms and Conditions of the right-of-way grant require, inter alia, "[San Miguel] agrees to comply with applicable regulations contained in 43 CFR, Part 2800, which regulations are incorporated herein and made a part hereof, as well as with all State and Federal laws and implementing regulations applicable to the authorized use now or hereafter in force." *Id.* at Pg. 2.

6.      The right-of-way grant also incorporated Standard Stipulations, which included a provision stating: "The holder shall be fully liable to the United States for any damage or injury incurred by the United States in connection with the use and occupancy of the right-of-way area by the holder, its employees, contractors or employees of the contractors." *Id.* at pg. 5 (Bates No. USA_00000045) (Standard Stipulation 5).

7.      In 1983, when DOI/BLM and San Miguel entered into the right-of-way agreement, 43 C.F.R. Subpart 2800 stated: "Any occupancy or use of the public lands . . . without authorization shall be considered a trespass and shall subject the trespasser to prosecution and liability for the trespass." Decl. of D. Short at ¶ 3, Ex. B at pg. 306 (§2801.3). In the regulations enforced in 1983, the right-of-way holder was "fully liable to the United States for any damage or injury incurred by the United States in connection with the use and occupancy of the right-of-way." *Id.* at pg. 313 (§ 2803.1-4(a). The regulations enforced at that time further established a strict liability standard up to $1,000,000 (for any one event) so long as the right-of-way grant included a specific strict liability provision. *Id.* at pg. 313 (§ 2803.1-4(b)). When liability exceeded the strict liability limit, any excess liability "**shall be determined by the ordinary rules of negligence of the jurisdiction in which the damage or injury occurred**." *Id.* (Emphasis added).

8.    On May 22, 2010, a wildland fire known as the Beaver Fire started within the San Miguel Special Recreation Management Area. The fire started when, during a windstorm, Tree 1 blew over onto Tree 2, breaking the stem of Tree 2 and causing Tree 2 to fall into San Miguel's power lines (consisting of two lines (a neutral and an energized phase)) ECF No. 1 at ¶¶ 7, 11-14; ECF No. 5 at ¶¶ 7, 11-14; Decl. of G. Wright at ¶ 5.

9.    The area where the Beaver Fire started is located approximately 25 miles from Telluride, Colorado, and includes lands adjacent to Colorado Highway 145, which is the main highway accessing Telluride, Colorado. The land where the fire started is administered by BLM. ECF No. 1 at ¶ 7; ECF No. 5 at ¶ 7; ECF No. 13 (Scheduling Order) at 13, Stipulated Fact No. 3.

10.    The Beaver Fire spread onto the Norwood Ranger District of Uncompahgre National Forest, which is land administered by the Forest Service, and ultimately burned approximately 2,600 acres of forest land. ECF No. 1 at ¶¶ 7-9; ECF No. 5 at ¶¶ 7-8.

11.    Prior to the Beaver Fire, San Miguel had performed vegetation management work in the area where the Fire started in 2009. Decl. of P. Enstrom at ¶ 3; Decl. of G. Wright at ¶ 6. Inspecting the origin site of the Beaver Fire soon after the fire, expert arborist Galen Wright observed recent tree work along the right-of-way east of the origin site. Decl. of G. Wright at ¶ 6.

12.    Mr. Wright arrived at the site of the Beaver Fire on May 28, 2010.  Wright's investigation determined that the Beaver Fire started when Tree 1 blew over in a wind storm onto Tree 2 causing Tree 2 to contact San Miguel's power line.  Decl. of G. Wright at ¶¶ 4-5; *see also* ECF No. 1 at ¶¶ 10-14; ECF No. 5 at ¶¶ 10-14.

13.    During the May 22, 2010 windstorm, Tree 1, an approximately 85-foot-tall cottonwood tree, uprooted and blew over.  Decl. of G. Wright at ¶¶ 5, 7, 9. Prior to the fire, Tree

1 had green leaves and was growing on a terrace approximately 150 feet north of the San Miguel River and approximately 50 feet south of State Highway 145 near Mile Marker 94.5. *Id.* at ¶¶ 5, 8.

14.     Tree 1 was growing at a location approximately 25 feet south, and well outside of, San Miguel's 50-foot right-of-way. *Id.* at ¶ 9.

15.     After Tree 1 was uprooted, Mr. Wright found, during his investigation, evidence of decay below ground in Tree 1's root system, which would not have been visible until the tree uprooted. *Id.* at ¶ 8.

16.     When Tree 1 uprooted and blew over, it fell onto Tree 2, another cottonwood tree, which was approximately 64 feet tall. Decl. of G. Wright at ¶¶ 7, 9. Prior to the fire, Tree 2 was a live tree with green leaves. *Id.* at ¶ 8.  As a result of being struck by Tree 1, Tree 2's trunk broke approximately four feet above ground. *Id.* at ¶ 7.

17.     The two trees fell at an angle onto the power line with Tree 2 under Tree 1. Decl. of G. Wright at ¶ 9.

18.     The power line eventually broke and fell to the ground. Decl. of G. Wright at ¶ 9.

19.     During his investigation, Mr. Wright found evidence of power line contact marks on three branches of Tree 2. *Id.* He found no evidence of similar power line contact marks on any portion of the stem or branches of Tree 1. *Id.*

20.     By letter dated April 29, 2013, the United States Attorney's Office for the District of Colorado alleged that San Miguel owed the United States $1,870,636 for damages caused by the Beaver Fire and the cost of suppressing the fire.  Decl. of D. Short at ¶ 4, Ex. C. The United States stated that it would pursue a civil action against San Miguel under theories of negligence

and strict liability. *Id.* (In this action, the United States has abandoned its strict liability theory. ECF No. 13 at 7.)

21.     By two written agreements, the parties tolled the applicable statute of limitations by six months, from May 22, 2016 to November 22, 2016. Decl. of D. Short at ¶ 5.

22.     By letter dated November 18, 2016, the United States Attorney's Office for the District of Colorado alleged that San Miguel had trespassed on federal property citing as authority 43 C.F.R. § 2808.11.  Decl. D. Short at ¶ 6, Ex. D.

23.     Three days later, on November 21, 2016, the United States commenced this action against San Miguel. ECF No. 1.

24.     The United States alleges that San Miguel was negligent in failing to identify "hazard trees" that had the potential to contact San Miguel's power lines.  ECF No. 1 at ¶¶ 36 – 41. The United States further alleges that San Miguel's negligence in failing to identify "hazard" trees is a breach of San Miguel's contract with BLM, i.e., the 1983 right-of-way grant.  *Id.* at ¶¶ 42 – 46.

25.     The United States also alleges three trespass claims against San Miguel based on DOI regulations: 43 C.F.R. § 2808.10 (Third Claim for Relief, *id.* at ¶¶ 47 – 50) and 43 C.F.R. § 9230 (Fourth Claim for Relief, *id.* at ¶¶ 51 – 54), as well as interest and penalties associated with the alleged trespass pursuant to 43 C.F.R. § 2808.11 (Sixth Claim for Relief, *id.* at ¶¶ 60 – 63).[2]

---

[2]DOI regulations apply to BLM lands.  Such regulations do not affect Forest Service lands, as the Forest Service is administered by the Department of Agriculture. Thus, the United States' trespass claims in this case are limited to alleged trespass to BLM lands, not Forest Service lands.

**LEGAL STANDARD**

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Emerson v. Kan. City S. Ry. Co.*, 503 F.3d 1126, 1128 (10th Cir. 2007). In reviewing such motion, a court must "view the evidence in the light most favorable to the non-moving party." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). However, the court is not required to "make unreasonable inferences in favor of the non-moving party." *Carney v. City & County of Denver*, 534 F.3d 1269 (10th Cir. 2008).

A court's function at the summary judgment stage is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

**ARGUMENT**

San Miguel requests the Court dismiss the United States' trespass claims (Claims of Relief Three, Four, and Six). The DOI regulations cited by the United States, which broadly define "trespass," cannot provide a cause of action independent of federal or state statute or common law. Federal agencies do not have the power to make law, and, in the absence of clear federal law, the Colorado common law of trespass applies. No evidence supports that San Miguel intended to start

the Beaver Fire.  As Colorado does not recognize a cause of action for "negligent trespass," the United States' trespass claims fail as a matter of law.

Even if the United States could rely on DOI regulations to support a cause of action for trespass, the United States' claims of trespass fail because 43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239 do not have the force and effect of law. DOI promulgated these regulations in excess of Congressional authorization. Through the regulations, DOI impermissibly defines "trespass" to include (1) any "injury" to timber regardless of fault or intent, 43 C.F.R. § 9239.0-7; and, (2) non-willful acts or omissions such as "mistake or inadvertence," 43 C.F.R. §§ 2808.10 and 2808.11. Further, the United States did not adhere to the procedures required to hold a "trespasser" accountable through administrative proceedings under 43 C.F.R. Subpart 2808, which denied due process to San Miguel.

**A.  The United States' trespass claims should be dismissed because there is no federal statute or federal common law right allowing the United States to bring a cause of action for trespass and reimbursement for damages caused by forest fires.**

The federal and state governments have concurrent civil and criminal authority over national forests.  16 U.S.C. § 480.  The United States institutes its fire cases in federal district courts under the jurisdictional grant of 28 U.S.C. § 1345.  As a general rule, when seeking redress for a fire's trespass to its timber, the United States "stands in the shoes" of any other injured landowner. *United States v. Denver & Rio Grande Western R. Co.*, 547 F.2d 1101, 1104 (10th Cir. 1977).

Federal district courts should apply state law unless a "significant conflict between some federal policy or interest in the use of state law in the premises' is demonstrated."  *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1963); *see also United States v. California*, 655 F.2d 914,

919 (9th Cir. 1980) ("[S]uits under § 1345 are not controlled by [*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1937)]."). State forest fire laws do not conflict with any important federal interests. *E.g.*, *California*, 655 F.2d at 920 ("applying California law to govern a cause of action involving a fire upon land as to which California maintains concurrent jurisdiction would further the state's proprietary interests . . . [and] would be accomplished without totally frustrating any federal policy or program."); *see also United States v. City & County of San Francisco*, 446 F. Supp. 2d 1140, 1144 (E.D. Cal. 2006) ("[T]here is no clear federal law to apply whereas there is clear state common law expressly directed to damages and costs caused by forest fires . . . In these circumstances, state substantive law governs.").

As there is no federal statute or common law right to obtain reimbursement for damages caused by fire, such a claim must be based on the law of state where the fire occurred. *E.g.*, *Denver & Rio Grande R.R. Co. v. United States*, 241 F. 614, 617 (8th Cir. 1917) ("There has been no legislation by Congress providing a right of action in cases of this character; therefore, if the plaintiff can recover at all, the right to do so must exist by reason of some statute of the state or by virtue of some common law rule adopted by the state or recognized by its courts authorizing a recovery in such cases"); *see also California*, 655 F.2d at 917 (California law "borrowed"); *United States v. Boone*, 476 F.2d 276, 278 (10th Cir. 1973); *County of San Francisco*, 446 F. Supp. 2d at 1143.

In *Boone*, the United States sued a Colorado landowner to recover the cost incurred in suppressing a forest fire that started on the landowner's property and spread to a national forest in Colorado. 476 F.2d at 277. After a jury trial, the district court directed the verdict in favor of the landowner, dismissing a claim based on Colorado state law, which the United States appealed. *Id.*

The Tenth Circuit reversed the district court's dismissal of the state law claim. *Id.* The Tenth Circuit found that the district court erred in concluding that damages to the forest were governed exclusively by federal law. *Id.* at 278. The Court noted that jurisdiction over national forests are shared by the federal and state governments, and "there is no other statutory provision putting the area within any special category of federal jurisdiction, and there is no authority demonstrating why this tract should be treated differently than any other land in Colorado for these purposes." *Id.* The Court further explained, "Colorado statutes on other subjects govern the actions of individuals in this forest, and no reason appears why the United States as a landowner should not avail itself of Colorado statutory provisions which are available to other landowners under like circumstances." *Id.* The Tenth Circuit reasoned that the United States was protecting a proprietary interest and such suits are "local in nature." *Id.*

Colorado courts do not recognize a cause of action for negligent trespass. "A person is liable for trespass in Colorado if he or she "**intentionally** enter[s] the land possessed by someone else, or caus[es] a thing or third person to enter the land." *Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 602 (Colo. App. 2007) (subsequent citations omitted, emphasis added). "In Colorado . . . the present tort of trespass to property has no reference to the nature or immediacy of the harm, nor do [Colorado courts] recognize the tort of 'negligent trespass.'" *Burt v. Beautiful Savior Lutheran Church of Broomfield*, 809 P.2d 1064, 1067 (Colo. App. 1990) (subsequent citation omitted); *see also Minto v. Sprague*, 124 P.3d 881, 884 (Colo. App. 2005) (concluding that C.R.S. § 13-21-105(1) does not impose liability upon a person whose negligence started a fire, which spread onto another's property).

In this case, based on definitions contained in DOI regulations, the United States seeks to hold San Miguel liable for trespass based on San Miguel's alleged non-willful trespass. ECF No. 1. In cases in which the United States seeks recovery for damage to federal land by forest fire, there is no clear federal law, but there is also not a significant conflict between state law and any important federal interests. *California*, 655 F.2d at 919. An action brought by the United States to recover for damage caused by a wild fire is proprietary and "local in nature," and the United States must avail itself of the state common law and statutes available to other landowners. *Boone*, 476 F.2d at 277-78. Thus, in this case, the United States must avail itself of Colorado state law. *Wallis & Pan Am. Petroleum Corp.*, 384 U.S. at 68; *Boone*, 476 F.2d at 278. There is no evidence to support that San Miguel intentionally ignited the Beaver Fire. Colorado courts do not recognize a claim of "negligent trespass"; rather, Colorado courts require the trespasser to act with intent. *Antolovich*, 183 P.3d at 602; *Burt*, 809 P.2d at 1067. The United States should be prohibited from relying on definitions contained in DOI regulations in seeking to hold San Miguel liable for claims not recognized under Colorado law.

In sum, there is no federal statute or federal common law right permitting the United States to recover damages arising from a forest fire based on a trespass theory. DOI does not have the power to create substantive law, and its regulations cannot form the basis for the United States' trespass claims in this action. The United States must avail itself of Colorado statutes and common law, which do not permit a cause of action for "negligent trespass." The United States' trespass claims against San Miguel should be dismissed.

B.   **The United States' trespass claims should be dismissed because 43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239 do not have the force and effect of law to the extent that the regulations impose a strict liability standard (43 C.F.R. Subpart 9239), and define "trespass" to include non-willful acts or omissions (43 C.F.R. § 2808.10).**

The United States Constitution bestows upon Congress the power to make laws, and charges the executive branch to enforce them. U.S. CONST., Art. I, § 8, cl. 18; U.S. CONST., Art. II, § 1, cl. 1.  It is axiomatic that "[t]he power of an administrative officer or board to administer a federal statute and to prescribe rules and regulations to that end **is not the power to make law** . . . but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Dixon v. United States*, 381 U.S. 68, 74 (1965) (emphasis added, quotation omitted).  "A regulation which does not do this, but operates to create a rule out of harmony with the statute, is a mere nullity." *Id.* at 74. Given the rise of the "administrative state" (sometimes described as the "headless fourth branch of government"), "the citizen confronting thousands of pages of regulations . . . can perhaps be excused for thinking that it is the agency really doing the legislating." *City of Arlington, Tex. v. F.C.C.*, 569 U.S. 290, 315 (2013) (Roberts, J., dissenting).

Federal regulations that go beyond the authority granted by Congress to the promulgating agency do not typically have "the force of law . . . to [the] extent [that they] may supply the rule of decision in federal question cases." *United States v. Walter Dunlap & Sons, Inc.*, 800 F.2d 1232, 1238 (3d Cir. 1986). "Because of constitutional constraints, that source of law . . . is subject to definite limitations." *Id.* Courts recognize two categories of regulations: interpretative and substantive.  "'[I]nterpretative' rules do not have the force and effect of law because they are statements of policy issued by an agency asserting its construction of a statute or regulation." *Walter Dunlap & Sons, Inc.*, 800 F.2d at 1238.  "In contrast, 'substantive' regulations may have the force of law if they are authorized by Congress and promulgated by an agency to implement a

statute." *Id.* (citing *Chrysler Corp. v. Brown,* 441 U.S. 281, 302 n.31 (1979)). "Substantive regulations affect individual rights and obligations but do not without more have the 'force and effect of law.'" *Id.* (citing *Chrysler Corp.*, 441 U.S. at 302). "Even if the regulation were considered as substantive, it nevertheless would not be entitled to be treated as applicable law." *Id.* "For that to occur, "it is necessary to establish a nexus between the regulations and some delegation of the requisite legislative authority by Congress." *Id.* (citing *Chrysler Corp.*, 441 U.S. at 304).

Congress mandates DOI to manage public lands based on "principles of multiple use and sustained yield." 43 U.S.C. § 1732. "Multiple use" means "the management of the public lands and their various resource values so that they are utilized in the combination that will best meet the present and future needs of the American people . . ." 43 U.S.C. § 1702. 43 C.F.R. §§ 2808.10 and 2808.11 and 43 C.F.R. Subpart 9239 exceed the scope of DOI's legislative authority by imposing overly strict "trespass" standards on entities that make beneficial use of public lands. These regulations do not have the force and effect of law, and cannot be used to support a claim that San Miguel "trespassed" on public lands.

1.   43 C.F.R. §§ 2808.10 and 2808.11 do not have the force and effect of law to the extent that they define "trespass" to include non-willful acts and omissions, including "mistake and inadvertence."

a.   *Statutory Authority for 43 C.F.R. §§ 2808.10 and 2808.11.*

43 C.F.R. §§ 2808.10 and 2808.11 cite to four statutes as providing the authorization for the regulations: 43 U.S.C. §§ 1733, 1740, 1763, and 1764.

•   43 U.S.C. § 1733(a) provides BLM the authority to promulgate regulations that create criminal liability for any person who "knowingly and willfully violates any [regulation

issued by the Secretary of the Interior]." 43 U.S.C. § 1733(b) authorizes the United States to bring a civil action for "an injunction or other appropriate order to prevent any person from utilizing public lands in violations of regulations issued by [the Secretary of the Interior]."

- 43 U.S.C. § 1740 states:

The Secretary, with respect to the public lands, shall promulgate rules and regulations to carry out the purposes of this Act and of other laws applicable to the public lands, and the Secretary of Agriculture, with respect to lands within the National Forest System, shall promulgate rules and regulations to carry out the purposes of this Act.

- 43 U.S.C. § 1763 allows DOI to promulgate regulations concerning right-of-ways, but does not mention a right-of-way holder's scope of liability or actions to enforce right-of-way issues.

- 43 U.S.C. § 1764, which also concerns right-of-ways, lists "general requirements" for right-of-ways granted by the Secretary. Concerning the authority of DOI to promulgate regulations concerning a right-of-way holder's liability and DOI's ability to enforce violations, 43 U.S.C. § 1764(h) provides:

**(h)      Liability for damage or injury incurred by United States for use and occupancy of rights-of-way; indemnification of United States; no-fault liability; amount of damages.**

(1)      The Secretary concerned shall promulgate regulations specifying the extent to which holders of rights-of-way under this subchapter shall be liable to the United States for damage or injury incurred by the United States caused by the use and occupancy of the rights-of-way. The regulations shall also specify the extent to which such holders shall indemnify or hold harmless the United States for liabilities, damages, or claims caused by their use and occupancy of the rights-of-way.

(2)      Any regulation or stipulation imposing liability without fault shall include a maximum limitation on damages commensurate with the foreseeable risks or hazards presented. Any liability for damage or injury in excess of this amount shall be determined by ordinary rules of negligence.

      b.      *There is no nexus between DOI's statutory authority and 43 C.F.R. §§ 2808.10 and 2808.11's broad definition of "trespass" to include acts or omissions of "mistake or inadvertence"; thus, these regulations do not have the force and effect of law.*

In 2005,[3] DOI promulgated 43 C.F.R. §§ 2808.10 and 2808.11 in excess of DOI's statutory delegation of authority; thus, DOI's trespass regulations do not have the force and effect of law so as to form the basis for a civil cause of action.  43 C.F.R. § 2808.10 is an "interpretative" regulation because it merely sets forth a definition used by DOI to determine whether something is a "trespass." *Walter Dunlap & Sons, Inc.*, 800 F.2d at 1238. The United States may argue 43 C.F.R. § 2808.11 is a substantive regulation by creating an administrative procedure and penalties that may affect private interests. But to have the force and effect of law, there must be a "nexus" between substantive regulation some "delegation of the requisite legislative authority by Congress." *Walter Dunlap & Sons, Inc.*, 800 F.2d at 1238; *Chrysler Corp.*, 441 U.S. at 304.  There is no such delegation between Congress's mandate to DOI and DOI's regulation defining trespass to include non-willful act or omissions, 43 C.F.R. § 2808.10.

Congress explicitly authorized DOI to promulgate regulations to penalize, and enforce actions against, someone who "knowingly and willfully" damages public lands. 43 U.S.C. § 1733(a).  There is no similar Congressional authorization to penalize, and enforce actions against, someone who non-willfully, by mistake or inadvertence, damages public lands.

---

[3]DOI's definition of trespass contained in 43 C.F.R. §§ 2808.10 and 2808.11, promulgated in 2005, is completely different to how DOI treated trespass in 1983, when San Miguel entered into its right-of-way agreement with DOI/BLM. *Cf.* Decl. of D. Short, Ex. B (43 C.F.R. Subpart 2800 in effect in 1983). There is no way San Miguel could have known in 1983 that DOI would radically expand trespass liability 20 years after entering into the agreement.

The United States may argue that 43 U.S.C. § 1733(b) provides a legislative basis for DOI to promulgate regulations to penalize, and bring an action to enforce, damages caused by "mistake or inadvertence."  43 U.S.C. § 1733(b) grants DOI authority to enjoin and abate harm through "injunctions and other appropriate orders." *See also United States v. Nelson*, 592 Fed. Appx. 593 (9th Cir. 2015) (civil action brought by DOI seeking an injunction to eject the defendants from a mill site on BLM land); *United States v. Smith Christian Min. Enterprises, Inc.*, 537 F. Supp. 57, 63–64 (D. Or. 1981) (granting summary judgment to United States and issuing order (requested by United States) "directing defendant to remove themselves and their possessions from the land and directing that if they do not do so by a specified date, the remaining structures will be deemed abandoned and the property of the United States.").  In this case, the United States is not seeking an injunction or any type of order requiring San Miguel to cease its operations; there is no continuing "trespass" to enjoin.

And, further, authorizing an action for "injunction" or equitable order that enjoins or abates an activity is not the same as authorizing DOI to broadly define "trespass" to include non-intentional acts, and then allowing DOI to bring a civil action requiring a jury to apply this definition to potentially award damages to the United States. It is impossible to believe that Congress intended DOI to have the power to create substantive trespass law contrary to common law principles to impose excessively stringent liability standards on entities, such as San Miguel, that use public land to "best meet the present and future needs of the American people."  43 U.S.C. §§ 1702, 1732(a).

Because there is no nexus between DOI's grant of Congressional authority and 43 C.F.R. §§ 2808.10 and 2808.11, these regulations do not have the force and effect of law.

2.      43 C.F.R. Subpart 9239 does not have the force and effect of law to the extent that the regulations impose strict liability for "injury" to the resources of public lands.

a.      *Statutory Authority for 43 C.F.R. Subpart 9239*

Starting in 1970, DOI promulgated regulations to define "trespass" and to create procedures to enforce actions against alleged trespassers. These regulations were promulgated pursuant to the Materials Act of 1947, 61 Stat. 681, ch. 406, as amended by the Surface Resources Act of 1955, 69 Stat. 368, 30 U.S.C. §§ 601-615. *Watt v. W. Nuclear, Inc.*, 462 U.S. 36, 40 (1983). The Congressional authority for 43 C.F.R. Subpart 9239 is 43 U.S.C. § 1740, which states in relevant part: "The Secretary [of Interior], with respect to the public lands, shall promulgate rules and regulations to carry out the purposes of this Act and of other laws applicable to the public lands . . ."

b.      *There is no nexus between DOI's statutory authority and 43 C.F.R. Subpart 9239's broad definition of "trespass" to include any "injury" to the resources of public lands regardless of fault or intent.*

The United States alleges that San Miguel trespassed under 43 C.F.R. § 9239.0-7, which provides: "The extraction, severance, injury, or removal of timber or other vegetative resources or mineral materials from public lands under the jurisdiction of the Department of the Interior, except when authorized by law and the regulations of the Department, is an act of trespass" that may expose the trespasser to criminal or civil liability.  The regulations within Subpart 9239 are "interpretative," *Walter Dunlap & Sons, Inc.*, 800 F.2d at 1238; they provide definitions; they attempt to "warn" people of what BLM considers a trespass, *e.g.*, *United States v. McPhilomy*, 270 F.3d 1302, 1309 (10th Cir. 2001) (noting 43 C.F.R. § 9239.0-7 "warn[s] individuals who fail to comply with regulations that they may face criminal sanctions."). These regulations reflect BLM policy and procedures, they do not create substantive rights. Thus, 43 C.F.R. § 9239.0-7 does not

have the force and effect of law to form the basis for a civil cause of action.   Moreover, Subpart

9239 creates a strict liability standard for trespass. That is, any "injury" to timber or other natural

resource on public land "is an act of trespass." 43 C.F.R. § 9239.0-7. Congress has expressly

limited the circumstances under which strict liability can be imposed. 43 U.S.C. §1764(h). By

defining trespass to impose strict (civil) liability on anyone who injures a tree on public land,

regardless of fault or intent, DOI exceeds its statutory authority.[4]

Because the trespass regulations contained in 43 C.F.R. Subpart 9239 are interpretative

regulations, and impose a strict liability standard contrary to legislative mandate, these regulations

do not have the force and effect of law.

> 3. <u>The United States' trespass claims should be dismissed because the regulations that form the basis of the trespass claims do not have the force and effect of law to the extent that the regulations define trespass as any "injury" to timber and as any non-willful act that damages public lands.</u>

The United States' trespass claims fail as a matter of law because 43 C.F.R. §§ 2808.10

and 2808.11 and 43 C.F.R. Subpart 9239 do not have the force and effect of law because, in

defining trespass to include any "injury" to natural resources and non-willful acts, DOI has

---

[4]The United States has not argued that San Miguel trespassed in violation of 43 C.F.R. § 9239.1-1.  However, that regulation incorporates § 43 C.F.R. Subpart 5400 into Subpart 9239. 43 C.F.R. § 9239.1-1(a). 43 C.F.R. § 5400.0-5 contains a definition of trespass similar to that contained in 43 C.F.R. § 9239.0-7: "Trespass means the severance, removal, or unlawful use of timber or other vegetative resources without the consent (authorization) of the Federal Government, or failure to comply with contract or permit requirements that causes direct injury or damage to timber or other vegetative resources, or undue environmental degradation." 43 C.F.R. § 5400.0-5. Furthermore, 43 C.F.R. § 5462.2(b) lists 10 "prohibited" acts that may expose a person to "trespass" liability, all of which involve an intentional cutting, removing, or injuring of timber or other vegetative resource. Most of these "prohibited acts" that constitute "trespass" involve timber operations, and the regulation seems intended to curb illegal logging. The fact that trespass under Subpart 5462 involves intentional acts is inconsistent with DOI's regulations defining trespass to include non-willful acts.

exceeded its legislative mandate. There is no evidence that San Miguel's electrical distribution equipment (including power lines) was functioning improperly just prior to the Beaver Fire. (The dispute lies in whether San Miguel performed adequate vegetation management.) During a wind storm, Tree 1—a tree on BLM land, well outside of San Miguel's right-of-way—fell on Tree 2, a smaller tree closer to the power line, and the two trees fell like dominos, with Tree 2 falling onto San Miguel's power line from the weight of Tree 1, starting the Beaver Fire.  Decl. of G. Wright at ¶¶ 5-9; ECF No. 1 at ¶¶ 11-14. Under common law rules, this would not be a trespass because San Miguel did not intentionally enter and injure another's property. *E.g.*, *Antolovich*, 183 P.3d at 602; *Burt*, 809 P.2d at 1067.  But, through regulatory fiat, in degradation of the common law, and beyond the scope of its Congressional authority, DOI has promulgated regulations that would make a trespasser out of anyone who "injures" natural resources on public lands, or who, by "mistake or inadvertence" damages public lands.

43 C.F.R. §§ 2808.10 and 2808.11 and 43 Subpart 9239 do not have the force and effect of law and cannot provide the basis for the United States' trespass claims against San Miguel. The United States' Third, Fourth, and Sixth Claims for Relief should be dismissed.

**C.**     **The United States' claim for trespass pursuant to 43 C.F.R. §§ 2808.10 and 2808.11 should be dismissed because the United States neither satisfied the procedural requirements of the regulation nor afforded San Miguel minimum due process.**

"The BLM operates under administrative law in bringing actions for trespass."  *United States v. Kahre*, 2012 WL 2675453, at *3 (D. Nev. July 5, 2012) (citing 43 U.S.C. § 1701, 43 C.F.R. § 2808.10), *aff'd sub nom. United States v. Nelson*, 592 Fed. Appx. 593 (9th Cir. 2015). It is a "well-settled rule that an agency's failure to follow its own regulations is fatal to the deviant action." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 621 (D.C. Cir. 1997) (citation omitted); *see also*

*United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation remains in force the Executive Branch is bound by it."). The Supreme Court has admonished that "'unless we make the requirements for administrative action strict and demanding, *expertise*, the strength of modern government, can become a monster which rules with no practical limits on its discretion.'" *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co*., 463 U.S. 29, 48 (1983) (citations omitted).

In this case, the United States did not adhere fully (or fairly) to the requirements to bring a trespass action against San Miguel because it prevented San Miguel from appealing the decision by serving the notice three days before it filed this lawsuit.  The United States' failure to adhere to its own procedures is fatal to its trespass claim brought pursuant to 43 C.F.R. § 2808.11, and, further, fails to comport with due process requirements.

1. The United States' trespass claim based on 43 C.F.R. § 2808.10 fails because the United States did not adhere to its own administrative procedures.

43 C.F.R. § 2808.11(a) states that if BLM determines that a person is "in trespass" (as defined in 43 C.F.R. § 2808.10), it may commence an administrative action by "notify[ing] [the alleged trespasser] in writing of the trespass and explain [the alleged trespasser's] liability." Upon receiving such notice, "[the alleged trespasser] may appeal a trespass decision under § 2801.10 of this part." 43 C.F.R. § 2808.11(f).  43 C.F.R. § 2801.10(a) states that a person "may appeal a BLM decision issued under the regulations in this part in accordance with part 4 of this title"; Part 4 of 43 C.F.R. allows a person subject to a BLM decision 30 days to file a notice of appeal with the office of the officer who made the decision. 43 C.F.R. § 4.411(a).

According to the BLM's Fire Trespass Handbook, H-9238-1, available publicly as of December 2016:

> If the suspected trespasser does not agree with the findings, they [*sic*] can appeal the case to the Interior Board of Land Appeals.  If the Board agrees with the suspected trespasser, the case is closed.
>
> If the Board agrees the trespass action was justified, the trespasser must pay the bill.  If the trespasser elects not to pay, a formal collection process may be initiated or the case can be turned over to the U.S. Attorney's Office for the initiation of civil proceedings to recover the costs.

*See* https://www.blm.gov/style/medialib/blm/nifc/fuels.Par.../FireTrespassHandbook.doc at Sec. v-vi (last visited Dec. 19, 2016) (link no longer functioning). The alleged trespasser can then seek judicial review of the Interior Board of Land Appeal's decision pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, in the appropriate federal district court.  *See New W. Materials LLC v. Interior Bd. of Land Appeals*, 216 Fed. Appx. 385, 387 (4th Cir. 2007).

In this case, the United States provided a notice to trespass to San Miguel on November 18, 2016. Decl. of D. Short at ¶ 6, Ex. D.   The notice cited 43 C.F.R. § 2808.11, but did not set forth any administrative procedures pertaining to a trespass determination or mention the time or procedure for appealing such a decision. The United States filed this action against San Miguel three days after serving San Miguel with notice of its trespass decision.  ECF No. 1. San Miguel was afforded virtually no time to respond or to appeal this administrative determination.  The United States' failure to follow DOI's regulations is fatal to its claim that San Miguel is liable for regulatory trespass under 43 C.F.R. §§ 2808.10 and 2808.11. *IMS, P.C.*, 129 F.3d at 621. This is not to say that the United States should be precluded from bringing a lawsuit. *See* 28 C.F.R. § 2808.11(g). It simply means that the United States is foreclosed from relying on DOI regulations, which are contrary to federal or state statute or common law, as a basis for a civil claim against San Miguel as the regulatory remedies are only available through adherence to the administrative procedures.  *See Kahre*, 2012 WL 2675453, at *3 ("The BLM operates under administrative law

in bringing actions for trespass."). The United States should not be allowed to treat this lawsuit as a continuation of the BLM administrative process.

      2.    <u>By not following its own administrative procedures, the United States denied San Miguel due process.</u>

The manner in which the United States has pursued its claims against San Miguel does not comport with due process. The extent to which procedural due process must be afforded generally requires consideration of three distinct factors: (1) the private interest affected by agency action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 263-271 (1970).

In this case, the United States has demanded nearly $2 million from San Miguel for a "trespass" that San Miguel did not commit.  San Miguel is a member-owned, locally-controlled rural electric cooperative. Decl. of P. Enstrom at ¶ 3.  San Miguel serves approximately 9,600 members in rural western Colorado. *Id*. Any judgment against San Miguel ultimately affects the community San Miguel serves. The manner in which the United States informed San Miguel of its alleged liability for trespass lacked any procedural safeguards; the United States simply notified San Miguel that it was "in trespass" and then filed this action. Had San Miguel been given the opportunity to respond or appeal this determine, San Miguel may not have been required to defend against such claims in the instant action.  The fiscal and administrative burdens to allow San Miguel the ability to challenge the trespass determination are minimal.  The appeal system is already in place and the United States could have simply given San Miguel 30 days to respond. The United States has denied San Miguel due process to challenge the trespass determination

through available administrative procedures; San Miguel has been prejudiced because it now must defend against trespass claims based on this expansive administrative law that the United States did not follow.

In sum, there are no genuine issues of material fact and San Miguel is entitled to judgment as a matter of law on the United States' Third Claim for Relief (Trespass—43 C.F.R. § 2808.10). Such claim should be dismissed with prejudice.

**D.     The United States' claim for interest pursuant to 43 C.F.R. § 2808.11 fails for the same reason its trespass claim based on 43 C.F.R. § 2808.10 fails.**

43 C.F.R. § 2808.11 delineates a number of penalties that might apply to a person that BLM determines to be a trespasser.  As discussed *supra*, the United States' claim for trespass under 43 C.F.R. § 2808.10 fails because (1) the United States must avail itself of Colorado law, which does not recognize a claim for "negligent" trespass, (2) DOI's definition of trespass to include non-willful acts exceeds DOI's statutory authorization, and (3) the United States did not follow the regulations' procedures in bringing an administrative action.  If the Court dismisses the United States' claim for trespass under 43 C.F.R. §2808.10, it should also dismiss the United States' claim for remedies sought pursuant to the same regulation. The United States' Sixth Claim for Relief should be dismissed.

///

///

///

///

///

///

## CONCLUSION

For the foregoing reasons, San Miguel respectfully requests that its Motion for Partial Summary Judgment be granted and the United States' Third, Fourth, and Sixth Claims for Relief be dismissed with prejudice.

Respectfully submitted on this 8th day of August, 2018.

PAINE HAMBLEN LLP

By:    */s/ Daniel W. Short*
        Daniel W. Short
        Donald G. Stone
        Paine Hamblen LLP
        717 W. Sprague Ave., Ste. 1200
        Spokane, WA  99201
        Telephone: (509) 455-6000
        Facsimile: (509) 838-0007
        dan.short@painehamblen.com
        don.strone@painehamblen.com

HALL & EVANS, LLC

By:    */s/ Cash K. Parker*
        Lance G. Eberhart
        Cash K. Parker
        Hall & Evans, LLC
        1001 Seventeenth Street, Suite 300
        Denver, Colorado 80202
        Telephone: (303) 628-3300
        Facsimile: (303) 628-3368
        eberhartl@hallevans.com
        parkerc@hallevans.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE  (CM/ECF)</u>

I hereby certify that on this 8th day of August, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Katherine Ross
Jacob Licht-Steenfat
United States Attorney's Office, District of Colorado
1801 California St., Ste. 1600
Denver, CO  80202
katherine.ross@usdoj.gov
Jacob.licht-steenfat@usdoj.gov
caitlin.mcconnell@usdoj.gov
annette.dolce@usdoj.gov
USACO.ECFCivil@usdoj.gov
*Attorneys for Plaintiff*

Daniel W. Short
Donald G. Stone
Paine Hamblen LLP
717 W. Sprague Ave., Ste. 1200
Spokane, WA  99201
Telephone: (509) 455-6000
Facsimile: (509) 838-0007
dan.short@painehamblen.com
don.stone@painehamblen.com
*Attorneys for Defendant*

*s/ Cash K. Parker*
Lance G. Eberhart
Cash K. Parker
Hall & Evans, LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202
Telephone: (303) 628-3300
Facsimile: (303) 628-3368
eberhartl@hallevans.com
*Attorneys for Defendant*

I:\SPODOCS\00068\00174\PLEAD\01730407.DOCX